*Cantrell v. Liberty Life Ins. Co.*

JACOB C. CANTRELL v. LIBERTY LIFE INSURANCE COMPANY

No. 8319SC526

(Filed 5 June 1984)

**Insurance § 41— interpretation of "final discharge" from hospital—coverage of plaintiff's wife under policy**

In an action to recover benefits under a group life and medical insurance policy which provided that coverage for an insured employee's dependent already in the hospital on the effective date of the policy, 1 September 1979, would be deferred until the defendant's final discharge from the hospital, the trial court properly found plaintiff's wife was covered for her hospitalization after 5 September 1979 where plaintiff's wife was admitted to Rowan Hospital on 31 August 1979 for evaluation of a heart condition; where that hospital discharged her on 5 September 1979; and where she then went by ambulance to Duke Medical Center, was admitted, and underwent open heart surgery incurring expenses in excess of $70,000.

APPEAL by defendant from *Albright, Judge*. Judgment entered 17 December 1982 and amended 1 February 1983 in Superior Court, ROWAN County. Heard in the Court of Appeals 2 April 1984.

Defendant issued to plaintiff's employer a group life and medical insurance policy with an effective date of 1 September 1979. Plaintiff, an employee eligible for coverage under the policy, enrolled in the plan. His wife qualified for coverage as his dependent.

Both the policy and the certificate issued to plaintiff provided that the effective date of coverage for an employee's dependent already in a hospital on 1 September 1979 would be deferred until the dependent's final discharge from the hospital. Plaintiff's wife was admitted to Rowan Hospital on 31 August 1979 for evaluation of a heart condition. That hospital discharged her on 5 September 1979. She then went by ambulance to Duke Medical Center where, after being examined for several hours, she was admitted. She underwent open heart surgery at Duke, incurring expenses in excess of $70,000.

Defendant refused to pay plaintiff's claim for insurance benefits on the ground that the policy did not become effective as to his wife until her discharge from Duke. The trial court, sitting without a jury, held that the effective date of coverage for plain-

tiff's wife was the date of her discharge from Rowan Hospital, and that defendant therefore was liable for most of the expenses incurred at Duke.

Defendant appeals.

*Kluttz, Hamlin, Reamer, Blankenship & Kluttz, by Clarence Kluttz and Lewis P. Hamlin, Jr., for plaintiff appellee.*

*Moore, Van Allen and Allen, by William S. Patterson and Joseph W. Eason, for defendant appellant.*

WHICHARD, Judge.

Defendant excepted to the following finding:

The Court finds as a fact that plaintiff's discharge from Rowan Memorial Hospital on September 5, 1979, was a "final discharge from the hospital" in accordance with the practices of Rowan Memorial Hospital and within the meaning of this policy of insurance. Dr. Agner, who ordered his patient discharged from Rowan Memorial Hospital and referred her to Dr. Gallis at the Duke Medical Center, had no authority to order the admission of the patient to Duke Hospital and did not undertake to do so. Both Dr. Agner and the chief executive of Rowan Memorial Hospital have testified, and the Court finds, that the actions taken at Rowan Memorial Hospital amounted to a final discharge from Rowan Memorial Hospital.

As noted above, the policy and the certificate both stated that the effective date of coverage for a dependent already in *a* hospital on 1 September 1979 would be deferred until the dependent's final discharge from *the* hospital. Plaintiff's wife was in Rowan Hospital on 1 September 1979. Based on the foregoing finding that she was discharged on 5 September 1979, the trial court concluded that plaintiff's wife was covered by defendant's policy for her medical expenses incurred on and after 5 September 1979.

Defendant contends the finding of a "final discharge" within the meaning of the policy improperly was treated as a factual, rather than legal, issue. The distinction between what is properly a finding of fact and a conclusion of law is not always clear. The finding could be considered an ultimate fact, a mixed question of

fact and law, or an application of law to fact. There is authority that the meaning of language used in an insurance policy is a question of law, however. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E. 2d 518, 522 (1970). Consequently, the finding that on 5 September 1979 plaintiff's wife finally was discharged from Rowan Hospital within the meaning of the policy should have been a conclusion of law.

A conclusion of law can support a judgment even though incorrectly denominated a finding of fact, however. *See Hodges v. Hodges*, 257 N.C. 774, 780, 127 S.E. 2d 567, 572 (1962). The other findings, which are based on competent and substantial evidence, support the conclusion that plaintiff's wife finally was discharged on 5 September 1979 within the meaning of the policy. The term "final discharge," as used in defendant's policy, is clear and unambiguous. "No ambiguity . . . exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Wachovia, supra.* "[N]ontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." *Id.*

"Final discharge from the hospital" is a nontechnical phrase, not defined in any special way in the policy. Use of the article "the" indicates that when an insured's discharge from one hospital is final, the coverage becomes effective regardless of later admission to a different hospital. Plaintiff's wife's discharge from Rowan Hospital was final because that hospital had ended all responsibility for her care, and the discharge was not contingent upon her acceptance at Duke. While a doctor at Rowan referred her to Duke, he had no authority to admit her there.

Even if the policy term "final discharge" did not, by its normal, nontechnical meaning, clearly apply to plaintiff's wife's discharge from Rowan Hospital, the result would be the same. At most the meaning of the phrase would be ambiguous, and ambiguous terms in an insurance policy must be resolved in favor of the policyholder and against the insurer. *Id.*

Defendant maintains that the phrase "final discharge" must be construed in context with other policy provisions. Specifically, the part of the policy dealing with medical expense benefits provided that hospital confinements would be considered one period

of confinement unless separated by six months or due to unrelated causes. Defendant asked the court to find as a fact that plaintiff's wife was confined to Rowan Hospital and Duke for the same or related causes.

The evidence completely supported the requested finding, but the court properly declined to make it. The policy provision defining "hospital confinement" relates to computation of benefits, as the court correctly concluded, and has no bearing on the provision governing the effective date of coverage. Whether plaintiff's wife was confined to Duke and Rowan Hospital for related causes is thus irrelevant to the issue of the effective date of coverage.

Defendant contends that if the effective coverage date is 5 September 1979, plaintiff is limited to a $500 recovery due to a pre-existing condition exclusion and a transition endorsement. The "Expenses Excluded" provision limits benefits to $500 for medical services "if such medical care or services are received within the 3-month period immediately prior to the effective date of the Employee's or Dependent's insurance." Plaintiff only claims benefits for medical services received *after* the effective date, 5 September 1979. The preceding exclusion for services received *before* the effective date thus has no application.

Defendant argues that the intent of the "Expenses Excluded" provision was to exclude payment for medical services received at any time for sickness occurring within the three month period prior to the effective date of coverage. Language in the transition endorsement refers to and paraphrases the "Expenses Excluded" provision in a manner which supports defendant's argument. The "Expenses Excluded" provision is, however, clear and unambiguous on its face. The transition endorsement at best creates an ambiguity which must be resolved in plaintiff's favor; and by defendant's own admission, this endorsement has no application to this case.

Defendant assigns error to the admission of certain statements by plaintiff's employer concerning the effective date of the master policy. Because the court found in defendant's favor on this issue, these evidentiary rulings are not material.

A repetitive refrain of defendant's argument is that it was not its intent to provide coverage in a situation such as that

presented. We do not question the authenticity of that refrain. The language of the policy, however, given its normal, nontechnical meaning, results in coverage, or at most presents an ambiguity which must be construed against the insurer. The policy could, with considerable ease, have been written so as clearly to exclude coverage in the situation presented; but "it is the duty of the court to construe an insurance policy as it is written, not to rewrite it and thus make a new contract for the parties." *Allstate Ins. Co. v. Shelby Mutual Ins. Co.*, 269 N.C. 341, 346, 152 S.E. 2d 436, 440 (1967). In our view the trial court correctly construed the policy in question "as it is written."

Affirmed.

Chief Judge VAUGHN and Judge HILL concur.